## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**THOMAS BRITTON,**

     **Plaintiff,**

**v.**

**C/O LOERA,**
**SARGEANT DINTELMAN,**
**C/O BAKER,**
**C/O PROYCE,**
**JOHN DOE 1,**
**JOHN DOE 2,**
**JOHN DOE 3,**
**JOHN DOE 4,**
**LT. JOHN DOE,**
**JOHN OR JANE DOES,**
**WARDEN WILLS, and**
**JOHN OR JANE DOE,**

     **Defendants.**

**Case No. 24-cv-02360-SPM**

## <u>MEMORANDUM AND ORDER</u>

**MCGLYNN, District Judge:**

  Plaintiff Thomas Britton, an inmate of the Illinois Department of Corrections and who is currently incarcerated at Menard Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE COMPLAINT

Plaintiff alleges that on or around Mary 17, 2024, while he was housed in West House, he was washing himself when Correctional Officer Loera approached his cell and spoke harshly to him about his body being exposed while he, Loera, came by his cell. (Doc. 1, p. 5, 21). Plaintiff explained to Loera that he did not hear Loera approach and that he could not put up a sheet for privacy or he would receive a disciplinary ticket. Loera responded, "well you would rather get a ticket for a line or sheet then have me write [you] up for a #107 sexual misconduct." (*Id.* at p. 5). Loera then walked away from Plaintiff's gallery. Plaintiff asserts that he never hollered or screamed on the gallery. (*Id.*).

Ten minutes later, Loera and Sergeant Dintelman came to his cell and told him to pack up his things because he was being transferred to segregation. (Doc. 1, p. 5-6). Plaintiff was placed in handcuffs and instructed to walk out through one of the doors. When he did so, Plaintiff was sprayed with mace directly in the face. Plaintiff was then forced to place his forehead up against the wall of West House, while handcuffed and holding his segregation bag containing his belongings. (*Id.* at p. 6). Plaintiff was turned to the right and sprayed in the face again with mace. (*Id.* at p. 7).

Correctional Officer Loera and either Sergeant Dintelman or an unknown correctional officer escorted Plaintiff to the healthcare unit. (Doc. 1, p. 7). Plaintiff explains that at this time and during subsequent events, he could not see clearly because of the chemicals in his eyes from the mace. (Doc. 1, p. 7-8). At the healthcare unit, a nurse took Plaintiff's vitals, and he was taken to North 2 Cell House. The officers escorting him to the healthcare unit and then to North 2 Cell House were overly aggressive and would ram Plaintiff's head into gates, bars, and doors. (*Id.* at p. 8). Once at North 2 Cell House, Plaintiff was placed in a "bullpen" area. The correctional officers

teased and taunted Plaintiff, who was disoriented and still could not see. Plaintiff was sprayed with more mace. Plaintiff was then directed to "strip" and remove all his clothes. While naked, the correctional officers sprayed him with mace on his genitals, back, and buttocks – all while laughing. (*Id.* at p. 8-10).

Following the use of unnecessary force against him, on May 21, 2024, Plaintiff informed Correctional Officers Baker and Proyce that he would like to file a PREA form. (Doc. 1, p. 11). Baker and Proyce informed Plaintiff that he would have to write a grievance to complain about the mistreatment by the correctional officers because they would not call mental health or Internal Affairs. (*Id.*). Plaintiff then filed an emergency grievance with Warden Wills requesting mental health and medical attention. (*Id.* at p. 12). Warden Wills determined that the grievance was not an emergency, and Plaintiff had to resubmit his grievance to the counselor, prolonging his pain and injuries and delaying discipline for the offending correctional officers. The counselor responded to Plaintiff's grievance that Internal Affairs had opened an investigation about the incident. (*Id.*).

Plaintiff states that he remains in constant pain and discomfort from his injuries. (Doc. 1, p.13). Because he was unable to clean the mace spray from his body and did not receive timely medical care, he has scar tissue, scabs, and welts on his genitals. (*Id.* at p. 4, 12-13). Plaintiff states he filled out a request to be seen by medical staff, but his medical call pass was canceled. He has not been rescheduled. (*Id.* at p. 4, 13).

Three months after the use of excessive force, Plaintiff met with Jane Doe, a mental health professional. (Doc. 1, p.13). During the meeting, Plaintiff was "chained down to the floor," and a correctional officer remained in the room. Plaintiff told Jane Doe that he was not comfortable speaking with her about the May 17 events in front of the correctional officer. Plaintiff believes

this was a violation of the "privacy act involving mental health treatment." (*Id.*).

### PRELIMINARY DISMISSALS

The Court first dismisses all Section 1983 claims against Warden Wills. Warden Wills cannot be held liable for a constitutional violation solely because he received Plaintiff's emergency grievance and deemed it non-emergent, which Plaintiff claims contributed to a delay in care and disciplinary action against the assaulting officers. (Doc. 1, p. 12). It has long been held that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to a violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (explaining that "[o]nly persons who cause or participate in the violations are responsible"). Accordingly, Wills did not violate the constitution by deeming Plaintiff's grievance a nonemergency.

Plaintiff has also failed to state a claim against Wills, Baker, and Proyce for not following the rules and regulations of the Prison Rape Elimination Act (PREA) in processing and investigating Plaintiff's complaints. (Doc. 1, p. 11, 12). PREA "does not give prisoners a personal right to sue for an official's failure to comply with the Act's requirements." *See Summers v. Waggoner*, No. 19-cv-01338-SMY, 2020 WL 6321488, at *3 (S.D. Ill. Oct. 28, 2020) (collecting cases). Because Plaintiff does not have a cause of action under PREA, any claims he is attempting to assert for violation of this federal statute are dismissed. As there are no further allegations against Wills, all individual capacity claims against him are dismissed without prejudice.

The Court also dismisses any substantive due process claims Plaintiff is intending to bring. Plaintiff states that the correctional officers violated his due process rights by failing to secure medical attention for him after the use of excessive force. (Doc. 1, p. 11). The Court will examine the alleged denial of medical care under the Eighth Amendment, and the due process claim is dismissed. *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (where a claim is covered by

a more specific constitutional provision, such as the Eighth Amendment, the Supreme Court has held that the claim must be analyzed under the standard appropriate to that specific provision instead of substantive due process).

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** Eighth Amendment excessive force and/or failure to intervene claim against Loera, Dintelman, John Doe 1, John Doe 2, John Doe 3, John Doe 4, and Lieutenant John Doe for the use of excessive force against Plaintiff on or around May 17, 2024.

**Count 2:** Eighth Amendment claim against Loera, Dintelman, John Doe 1, John Doe 2, John Doe 3, John Doe 4, Lieutenant John Doe, Baker, Proyce, and John and Jane Does med-techs/nurses for denying Plaintiff access to medical care for his injuries sustained from the use of force on or around May 17, 2024.

**Count 3:** Eighth Amendment claim against Baker, Proyce, and John or Jane Doe mental health personnel for denying Plaintiff mental health care.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

### Count 1

Plaintiff has sufficiently stated a claim against Defendants for the use of excessive force. Count 1 will proceed against Loera, Dintelman, John Doe 1, John Doe 2, John Doe 3, John Doe 4, and Lieutenant John Doe. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (an Eighth Amendment excessive force claim requires an inquiry into "whether force was applied in a good-faith effort to maintain or restore discipline, or [whether it was] applied maliciously and sadistically to cause

---

[1] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

harm").

## Count 2

Plaintiff has sufficiently stated a claim against those who were involved in the use of force and then failed to provide him access to medical treatment for his physical injuries – Loera, Dintelman, John Doe 1, John Doe 2, John Doe 3, John Doe 4, and Lieutenant John Doe. *See Cooper v. Casey,* 97 F. 3d 914, 917 (7th Cir. 1996).

As for his claims against John and Jane Does, described as med-techs and nurses, Plaintiff asserts that he submitted a request for a medical appointment, but as filing the Complaint, he has not seen a medical provider for the various injuries he incurred on May 17, 2024. (Doc. 1, p. 13, 14). He alleges that at one point, he was scheduled for an appointment, but the medical pass was canceled and has not been rescheduled. (*Id.* at p. 4). He states that the cancelation was a direct violation of his rights. (*Id.*). These allegations are not sufficient to state a claim against the John and Jane Does. While Plaintiff may use "John Doe" or "Jane Doe" to refer to parties whose names are unknown, he must still follow Federal Rule of Civil Procedure 8 pleading standards and include a short, plain statement of the case against that individual. He does not describe the unknown defendants or identify particular acts or omissions by any specific individuals who allegedly violated his constitutional rights. Thus, Count 2 is dismissed against the John and Jane Does. *See Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding that a complaint must describe "more than a sheer possibility that a defendant has acted unlawfully").

The Court will also dismiss Count 2 against Baker and Proyce. There is not sufficient information in the Complaint for the Court to plausible infer that Correctional Officers Baker and

Proyce knew about Plaintiff's ongoing physical ailments and acted with criminal recklessness in failing to help facilitate scheduling an appointment or acquire medical care. Plaintiff simply states that they failed to assist him in processing PREA paperwork and would not call mental health or Internal Affairs. (Doc. 1, p. 11).

### Count 3

To state an Eighth Amendment claim for deliberate indifference, the plaintiff must plead that (1) the harm that befell him was objectively, sufficiently serious and a substantial risk to his or her health or safety; and (2) the individual defendants were deliberately indifferent to the substantial risk to his health and safety. *Collins v. Seeman,* 462 F. 3d 757, 760 (7th Cir. 2006).

Plaintiff alleges that that he was not given mental health services by Baker or Proyce and told to write a grievance. (Doc. 1, p. 12). When he did eventually meet with a mental health professional, Jane Doe, he was forced to speak to Jane Doe in the presence of a correctional officer, violating his privacy rights.

These allegations are insufficient to state an Eighth Amendment claim. There are no facts from which the Court can infer Plaintiff was at risk of substantial danger and that Defendants ignored such risk in denying him immediate access to a mental health professional. *See Seeman,* 462 F. 3d at 761 ("a request to see a crisis counselor, standing alone, is not sufficient to put a defendant on notice that an inmate poses a substantial and imminent risk of" harm to himself). Furthermore, the Seventh Circuit has yet to recognize a constitutional right to medical privacy. *See Hunter v. Amin,* 583 F. 3d 486, 489-90 (7th Cir. 2009) (finding that a policy requiring a jail officer to be present during psychiatrist examinations did not violate the plaintiff's constitutional rights); *Franklin v. McCaughtry,* 110 F. App'x 715, 718-19 (7th Cir. 2004). And finally, there is no private right of action to enforce the provisions of Health Insurance Portability and Accountability Act

(HIPAA). *See Stewart v. Parkview Hosp*., 940 F.3d 1013, 1015 (7th Cir. 2019). *See also Dodd v. Jones,* 623 F.3d 563, 569 (8th Cir. 2010); *Wilkerson v. Shinseki,* 606 F.3d 1256, 1267 n.4 (10th Cir. 2010). For these reasons, Count 3 is dismissed without prejudice.

## OFFICIAL CAPACITY CLAIMS

Plaintiff states that he is suing all Defendants in their official and individual capacities. He cannot, however, sue Defendants in their official capacities for money damages. *See Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) (Eleventh Amendment bars official capacity claims for monetary damages). To the extent he is seeking injunctive relief, the warden of Menard is the most appropriate official capacity defendant. *See generally Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Accordingly, Counts 1 and 2 will proceed against the remaining Defendants in their individual capacities only. The official capacity claims against them are dismissed without prejudice. Warden Wills will remain a defendant in his official capacity only to carry out any injunctive relief that might be ordered and to respond to discovery aimed at identifying the unknown John Doe Defendants.

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** shall proceed against Loera, Dintelman, John Doe 1, John Doe 2, John Doe 3, John Doe 4, and Lieutenant John Doe. **COUNT 2** shall proceed against Loera, Dintelman, John Doe 1, John Doe 2, John Doe 3, John Doe 4, and Lieutenant John Doe and is **DISMISSED without prejudice** against Baker, Proyce, and John and Jane Does, *med-techs and nurses*. **COUNT 3** is **DISMISSED without prejudice.** Because there are no surviving claims against Baker, Proyce, John and Jane Does, *med-techs and nurses,* and John or Jane Doe, *mental health personnel*, the Clerk of Court shall terminate them as parties on the docket. All individual capacity

claims against Warden Wills are **DISMISSED without prejudice.** Wills shall remain a defendant in his official capacity for the purpose of responding to discovery aimed at identifying the John Doe Defendants and implementing any injunctive relief that may be ordered.

As this case involves issues concerning Plaintiff's medical care, the Clerk is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Loera, Dintelman, Wills (official capacity only) and John Doe 1, John Doe 2, John Doe 3, John Doe 4, and Lieutenant John Doe (once identified) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint (Doc. 1) and this Memorandum and Order to each defendant's place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant**

to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 14, 2025**

_____s/Stephen P. McGlynn_____
**STEPHEN P. MCGLYNN**
**United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.